USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8 6 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACE AMERICAN INSURANCE COMPANY,

                    Plaintiff,

      v.

BANK OF THE OZARKS,

                    Defendant.

**MEMORANDUM
OPINION & ORDER**

11 Civ. 3146 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a breach of contract and declaratory judgment action brought by Plaintiff

ACE American Insurance Company ("ACE") arising out of Defendant Bank of the Ozarks'

failure to honor ACE's draw request on a letter of credit issued by the Bank in favor of ACE.

(Cmplt. ¶ 1)  Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the

alternative, to transfer this action to the Eastern District of Arkansas.  For the reasons set forth

below, Defendant's motion will be denied in its entirety.

## BACKGROUND

### I.    THE BANK'S LETTER OF CREDIT

        ACE is an insurance company organized under Pennsylvania law.  (Cmplt. ¶ 2)

ACE issued general liability, automobile liability, workers' compensation and employers'

liability insurance policies to non-party Affiliated Foods Southwest, Inc. ("AFS").  (Id. ¶ 7)  In

connection with these insurance policies, ACE and AFS agreed that AFS would "establish an

unconditional, irrevocable evergreen letter of credit in favor of ACE in an amount and form

acceptable to ACE."  (Id. ¶ 8)

        At the request of AFS, the Bank of the Ozarks (the "Bank") – a state-chartered

institution organized under Arkansas law (id. ¶ 3) – issued an unconditional "standby irrevocable

letter of credit" to ACE ("Letter of Credit") on June 1, 2008, in the amount of $1,376,998. (Id. ¶¶ 7, 9, 10, Ex. A) The Letter of Credit obligates the Bank to honor all payment requests submitted by ACE up to the stated limits and until the date of expiration. (Id., Ex. A at 2) The Letter of Credit further provides that "[t]he obligation of Bank of the Ozarks under this Letter of Credit is the individual obligation of the Bank of the Ozarks, and is in no way contingent upon the reimbursement with respect thereto." (Id.)

The Letter of Credit provides that it is effective immediately, and that it expires on June 1, 2009 (the "Expiration Date") unless renewed as provided in the Letter of Credit. (Id. ¶ 12) Renewal is automatic for successive one-year periods "upon the expiration date . . . and upon each anniversary of such date" unless the Bank gives sixty days notice of its election not to renew. (Id. ¶ 14)

The Letter of Credit further provides that it is governed by the Uniform Customs and Practice for Documentary Credits (the "UCP"). (Id., Ex. A at 2) The Letter of Credit's merger clause states that it "sets forth in full the terms of [the parties'] understanding." (Id. at 1)

## II.   AFS'S BANKRUPTCY PETITION AND THE PARTIES' EARLIER LITIGATION

On May 5, 2009, AFS and its affiliated entities filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Arkansas. (Pikus Decl., Ex. 6 (Bankruptcy Court Dkt.))

On October 22, 2009, ACE filed a complaint against the Bank in this District alleging that it had failed and/or refused to pay certain then-pending draw requests totaling $143,006.76. (09 Civ. 8938(LAK), Dkt. No. 5 (Am. Cmplt.); see Ace American Ins. Co. v. Bank of the Ozarks, No. 09 Civ. 8938(LAK), 2010 WL 1257327, at *1 (S.D.N.Y. Mar. 18, 2010)) The Bank, as here, moved to dismiss or, in the alternative, for a transfer of the case to the Eastern

District of Arkansas. (Id., Dkt. No. 9)  In a March 18, 2010 memorandum opinion and order,

Judge Kaplan dismissed ACE's breach of contract claim as moot – except to the extent it sought

interest – because the Bank had paid the draw requests.  (Id., Dkt. No. 21; Ace American Ins.

Co., 2010 WL 1257327, at *2-3)  Judge Kaplan likewise dismissed ACE's declaratory judgment

claim, finding that a declaratory judgment would not "serve any useful purpose" given that it

appeared likely that the Bank would elect not to renew the Letter of Credit on June 1, 2010,

thereby rendering any further disputes between ACE and the Bank moot.  Ace American Ins.

Co., 2010 WL 1257327, at *3.  The parties subsequently entered into a settlement and the case

was dismissed. (No. 09 Civ. 8938(LAK), Dkt. No. 23)  The Bank elected not to terminate the

Letter of Credit, however, and it remains in effect. (Cmplt. ¶ 22).

## III.    THE OUTSTANDING DRAW REQUEST AND INSTANT COMPLAINT

On March 16, 2011, ACE submitted a draw request to the Bank in the amount of

$100,000. (Cmplt. ¶ 23, Ex. B)  The Bank has "failed and refused to honor and pay the [d]raw

[r]equest." (Id. ¶ 27)

On May 10, 2011, ACE filed the instant action. (11 Civ. 3146, Dkt. No. 1)  The

Complaint contains the same two causes of action alleged in the 2009 Amended Complaint –

breach of contract and declaratory judgment – and repeats most of the allegations in the 2009

Amended Complaint. (09 Civ. 8938(LAK), Dkt. No. 5 (Am. Cmplt.); Cmplt.)  ACE contends

that the Bank has breached the Letter of Credit by failing to pay the March 16, 2011 draw

request. (Cmplt. ¶¶ 35-41)  ACE further contends that it is entitled to a declaratory judgment

that the Bank is liable under the Letter of Credit to pay draw requests submitted by ACE. (Id. ¶

47)

3

# DISCUSSION

## I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. 544).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391,

398 (2d Cir. 2006)). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id. A court may also consider "public documents of which the plaintiff has notice." Brodeur v. City of New York, No. 04-CV-1859(JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).

Here, ACE argues – without explanation – that Defendant's motion to dismiss relies on facts outside the pleadings. (Pltf. Opp. Br. at 9 n. 7) The Bank has not responded to ACE's argument, nor has it asked the Court to convert its motion to one for summary judgment. ACE argues that the Court should not convert the Bank's motion to one for summary judgment, noting that it has had no opportunity to take discovery. (Id.)

The Court finds that Defendant's motion and Plaintiff's opposition papers present facts not pleaded in the Complaint and not contained in documents that are incorporated in the Complaint or are integral to the Complaint. This extraneous material includes the background for the March 16, 2011 draw request. The parties appear to agree that this draw request pertains to a Louisiana action brought by Lamar Bowman against ACE and AFS in connection with an August 9, 2009 automobile accident involving Bowman and an AFS employee. (Def. Br. 6, 10; Bachstadt Decl. ¶ 22-25). On August 3, 2010, ACE paid $100,000 in settlement of Bowman's claim, pursuant to an automobile liability policy it had issued to AFS. (Bachstadt Decl. ¶ 24) While the accident occurred prior to AFS's bankruptcy petition, the settlement was consummated after the petition was filed. (Id.; Def. Br. 6, 10) As discussed below, the Bank

argues that ACE violated the automatic stay under Section 362 of the Bankruptcy Code by settling – post-petition – the Bowman action.  (Def. Br. 10-12)

While the Court has considered the fact that AFS filed a bankruptcy petition – because that fact is reflected in public records of which Plaintiff had notice – it will not consider the material which has been submitted concerning the details of the Bowman action and ACE's settlement of Bowman's claim.  The Complaint makes no mention of AFS's bankruptcy, much less the Bowman lawsuit and ACE's settlement of Bowman's claim.  The facts concerning these matters are not pleaded in the Complaint, nor can it be said that the Complaint incorporates by reference or "relies heavily" on documents containing facts concerning these matters.  The Complaint pleads little more than that the Bank issued a letter of credit to ACE and then refused to honor ACE's draw request.  Whether the facts concerning Bowman's lawsuit and ACE's settlement of Bowman's claim are set forth in public documents is unclear; neither side has cited to court records demonstrating this to be so.

"Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion:  the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material."  Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

"The Court of Appeals for the Second Circuit has a strong preference for affording the non-moving party the opportunity to conduct discovery prior to granting a motion for summary judgment."  Architectural Sys., Inc. v. Mitchell, 08 CIV. 10812(LBS), 2010 WL 1141198, at *2 (S.D.N.Y. Mar. 24, 2010) (citing Hellstrom v. U.S. Dept. of Veterans Affairs,

201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.")).

Here, no discovery has taken place, and the Bank has not even asked that its motion be treated as one for summary judgment. Accordingly, the Court will treat the Bank's motion as a motion to dismiss and will not consider material outside the pleadings.

## II.   **BREACH OF CONTRACT**

The Bank concedes that it refused to honor ACE's March 16, 2011 $100,000 draw request but argues that its action was proper because the draw request violates the automatic stay resulting from AFS's filing of a bankruptcy petition. (Def. Br. 6, 10)  As discussed below, the Court finds that the automatic stay does not preclude ACE from drawing down on the Letter of Credit, because the Letter of Credit is not property of the debtor. Defendant's motion to dismiss ACE's breach of contract claim will therefore be denied.

### A.   **Automatic Stays Under the Bankruptcy Code**

A bankruptcy petition serves to stay "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C § 362(a)(1). The purpose of the automatic stay is to "provide[] the debtor with 'a breathing spell from [its] creditors.'" Teachers Ins. and Annuity Ass'n of America v. Butler, 803 F.2d 61, 64 (2d Cir. 1986). "By its terms, section 362 applies only to debtors, property of the debtor, or property of the estate, [however,] and [it] does not apply to stay proceedings against non-debtors." In re Calpine Corp., 365 B.R. 401, 408 (S.D.N.Y. 2007).

7

**B.     Nature of Letters of Credit**

"Letters of credit are commercial instruments that provide a seller or lender (the beneficiary) with a guaranteed means of payment from a creditworthy third party (the issuer) in lieu of relying solely on the financial status of a buyer or borrower (the applicant)." Nissho Iwai Europe v. Korea First Bank, 99 N.Y.2d 115, 119 (2002); see also 3Com Corp. v. Banco do Brasil, S.A.,171 F.3d 739, 741 (2d Cir. 1999). "Three distinct contractual relationships are usually present when a letter of credit is issued": (1) "the underlying agreement between the applicant   . . .  and the beneficiary . . ."; (2) the "contractual obligation . . . between the issuer . . . and its applicant . . . regarding the terms of the letter of credit and the extent of funds to be made available"; and (3) the contractual obligation between the issuer and the beneficiary – that is, the letter of credit itself – which embodies "the issuer's commitment to 'honor drafts or other demands for payment presented by the beneficiary . . . upon compliance with the terms and conditions specified in the credit.'" Id. (citing First Commercial Bank v Gotham Originals, 64 N.Y.2d 287, 294 (1985). "Fundamental to the letter of credit transaction is the principle that 'the issuing bank's obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement.'" 3Com Corp., 171 F.3d at 741 (quoting First Commercial Bank, 64 N.Y.2d at 294); see also Rockwell Int'l Systems, Inc. v. Citibank, N.A., 719 F.2d 583, 587 (2d Cir. 1983) (letters of credit "represent separate contractual undertakings that are, in legal contemplation, wholly distinct from whatever performance they ultimately secure"); Voest–Alpine Int'l Corp. v. Chase Manhattan Bank, N.A., 707 F.2d 680, 682 (2d Cir. 1983) (bank's obligation to the beneficiary "is primary, direct and completely independent of any claims which may arise in the underlying sale of goods transaction").

8

"This independence principle is predicated upon the fundamental policy that a letter of credit would lose its commercial vitality if before honoring drafts the issuer could look beyond the terms of the credit to the underlying contractual controversy or performance between its customer and the beneficiary." Township of Burlington v. Apple Bank for Sav., No. 94 Civ. 6116 (JFK), 1995 WL 384442, at *5 (S.D.N.Y. 1995) (citing KMW Int'l v. Chase Manhattan Bank, N.A., 606 F.2d 10, 16 (2d Cir. 1979)). "If the documents . . . comply with the terms of the credit, the issuer's duty to pay is absolute," regardless of what occurs in the related transaction. Alaska Textile Co. Inc. v. Chase Manhattan Bank, N.A., 982 F.2d 813, 816 (2d Cir. 1992).

The Second Circuit has explained the "independence principle" as follows:

> The fundamental principle governing documentary letters of credit and the characteristic which gives them their international commercial utility and efficacy is that the obligation of the issuing bank to [honor] a draft on a credit when it is accompanied by documents which appear on their face to be in accordance with the terms and conditions of the credit is independent of the performance of the underlying contract for which the credit was issued. This independence principle infuses the credit transaction with the simplicity and certainty that are its hallmarks. The letter of credit takes on a life of its own as manifested by the fact that in credit operations all parties concerned deal in documents, not in goods, services, and/or other performances to which the documents may relate.

Alaska Textile Co., 982 F.2d at 815-16 (internal citations and quotations omitted). The "independence principle" is embodied in the UCP. See UCP Article 3, 4.

Because of the "independence principle," an "issuing or confirming bank must honor a proper demand even though the beneficiary has breached the underlying contract, Centrifugal Casting Machine Co. v. American Bank & Trust Co., 966 F.2d 1348, 1352 (10th Cir. 1992), even though the insolvency of the account party renders reimbursement impossible, Wood v. R.R. Donnelley & Sons Co., 888 F.2d 313, 318 (3d Cir. 1989); and notwithstanding supervening illegality, impossibility, war or insurrection, KMW [Intern. v. Chase Manhattan

Bank, N.A.,] 606 F.2d [10,] 16 [(2d Cir. 1979)]. This independence principle is universally

viewed as essential to the proper functioning of letters of credit and to their particular value.

Centrifugal, 966 F.2d at 1352. The central purpose of the letter-of-credit mechanism would be

defeated if courts felt free to examine the merits of underlying contract disputes in order to

determine whether letters of credit should be paid. Id." Semetex Corp. v. UBAF Arab American

Bank, 853 F.Supp. 759, 770 (S.D.N.Y.1994).[1]

       The duty of the issuing bank to pay upon the submission of documents which

appear on their face to conform to the terms and conditions of the letter of credit is absolute, see

Beyene v. Irving Trust Co., 762 F.2d 4, 6 (2d Cir. 1985), absent proof of intentional fraud on the

part of the beneficiary. See Voest-Alpine Int'l Corp., 707 F.2d at 686; Semetex Corp., 853

F.Supp. at 773 (describing "narrow" fraud defense).

### C.    Letters of Credit and Bankruptcy

       "It is well settled that a letter of credit and the proceeds therefrom are not property

of the debtor's bankruptcy estate." In re Papio Keno Club, Inc., 247 B.R. 453, 459 (8th Cir. BAP

2000)[2] (citing In the Matter of Compton Corp, 831 F.2d 586, 589 (5th Cir. 1987); see also

Collier on Bankruptcy 362.03[8][b]. "When the issuer honors a proper draft under a letter of

credit, it does so from its own assets and not from the assets of its customer which caused the

letter of credit to be issued." Id.; see also In re Elegant Merchandising, Inc., 41 B.R. 398, 399

(Bankr. S.D.N.Y. 1984) ("A letter of credit and its proceeds are not 'property of the estate'

---

[1] See Wood, 888 F.2d at 318 ("The issuer must pay even if both the customer and the
beneficiary are insolvent, rendering it impossible to obtain reimbursement for the issuer's
honor.") (citing Eakin v. Continental Illinois Nat. Bank and Trust Co., 875 F.2d 114, 116 (7th
Cir. 1989) ("Issuers of letters of credit take the risk of insolvency. Standby letters of credit are
especially designed to deal with insolvency, and the fact that this risk came to pass . . . does not
afford [a bank] a good reason for balking [at satisfying a draw request].")

[2] The Letter of Credit is governed by New York law. (Cmplt., Ex. A at 2). However, because
AFS filed its bankruptcy petition in Arkansas, both parties cite to Eighth Circuit bankruptcy law.

within the meaning of 11 U.S.C. 541, and therefore the payment of a letter of credit is not a transfer of assets in violation of the automatic stay provisions of 11 U.S.C. 362. The letter of credit and its proceeds constitute property of the bank."); Praedium II Broadstone, LLC v. Wall Street Strategies, Inc., No. 04 Civ. 3880(WHP), 2004 WL 2624678, at *2 (S.D.N.Y. 2004) ("neither a letter of credit nor its proceeds are property of a bankruptcy estate under Section 541(a) of the [Bankruptcy] Code"); In re Page, 18 B.R. 713 (D.D.C. 1982) ("cashing the letter of credit will not divest the estate of property since neither the letter of credit nor its proceeds are property of the estate under the Bankruptcy Code"); Lower Brule Const. Co. v. Sheesley's Plumbing & Heating Co., Inc., 84 B.R. 638, 644 (D.S.D. 1988) ("Proceeds of a letter of credit held by a creditor of the estate for the benefit of a third party are not property of the debtor's estate."); In re Pine Tree Elec. Co., 34 B.R. 199 (Bankr. D. Me. 1983) ("In calling the letter of credit[, the beneficiary] is not acting to 'collect, assess, or recover a claim against the debtor that arose before the commencement of the case" in violation of 11 U.S.C. § 362(a)(6). Rather, [the beneficiary], in calling the letter of credit, seeks to enforce an independent, primary and direct obligation of the bank to it, the beneficiary of the letter of credit.") (citing In re Page, 18 B.R. 713).

**D.   Analysis**

The Letter of Credit issued to ACE reads in part:

> By order of our client, Affiliated Food Southwest, Inc., we hereby establish this Irrevocable Letter of Credit No. 0706035392 in your favor for an amount up to but not exceeding the aggregate sum of One Million Three Hundred Seventy Six Thousand Nine Hundred Ninety Eight Dollars ($1,376,998), effective immediately, and expiring at the offices of the Bank on June 1, 2009 unless renewed as hereinafter provided.
>
> . . . .
>
> Funds under this Letter of Credit are available to you against your sight draft(s), drawn on us, bearing the clause "Drawn under Credit No. 0706035392".

11

The Bank further stated that it had

> agree[d] with the drawers, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of this credit that such drafts will be duly honored upon presentation to the drawee. The obligation of the Bank of the Ozarks under this Letter of Credit is the individual obligation of the Bank of the Ozarks, and is in no way contingent upon the reimbursement with respect thereto.

(Cmplt. Ex. A at 2).

This language clearly sets forth the Bank's obligation to pay the draw request at issue here. ACE pleads that it "complie[d] in all respects with the requirement for payment under the Letter of Credit" (Cmplt. ¶ 25), and the Bank does not contend otherwise.

The Bank nonetheless argues that ACE is not entitled to payment, however, "[b]ecause the settlement of the prepetition claim upon which ACE bases its right to payment of the Draw Request is void ab initio, [and accordingly] ACE has no colorable right to expect honor of the Draw Request and there is no basis in fact to support such a right to honor." (Def. Br. 11) As discussed above, the facts concerning the Bowman lawsuit and ACE's settlement of Bowman's claim are not presently before this Court, and the Bank may not rely on these alleged facts in moving to dismiss. [3] To the extent that the Bank is arguing that the automatic stay resulting from the filing of AFS's bankruptcy petition precludes ACE from drawing down on the Letter of Credit, it cites no law in support of its position, which the courts have uniformly

---

[3] While the Court does not reach the question of whether ACE's payment of Bowman's claim violated the automatic stay, the law cited to date does not support the Bank's position. In Louisiana, tort plaintiffs such as Bowman "have a substantive right of action against the insurer of [a] debtor [such as AFS], and there is no necessity of naming, or attempting to recover against . . . the debtor." Landry v. Exxon Pipeline Co., 260 B.R. 769, 795 (Bankr. M.D. La. 2001). In Landry, the court found that the automatic stay provision in 11 U.S.C. § 362 does not apply to prevent direct actions against insurers of a debtor in "direct action states such as Louisiana," because in these circumstances the tort plaintiff is seeking to recover against the insurer and not against the debtor or its property. Landry, 260 B.R. at 795-96.

rejected. See, e.g., In re Guy C. Long, Inc., 74 B.R. 939, 943-44 (Bankr. E.D. Pa. 1987) ("It is

the independence of that agreement, by which the bank commits its own funds and then must

look to its customer for reimbursement, which has caused virtually all courts, both under the

present Bankruptcy Code as well as the former Bankruptcy Act, to conclude that payment of a

letter of credit does not violate the automatic stay.") (citing cases); In re Page, 18 B.R. 713, 715,

717 (D.D.C. 1982) (payment on letter of credit not subject to automatic stay; "cashing the letter

of credit will not divest the estate of property since neither the letter of credit nor its proceeds are

property of the estate under the Bankruptcy Code"; "If payment on a letter of credit could be

routinely delayed by the filing of a Chapter 11 petition the intended substitution of a bank for its

less credit-worthy customer would be defeated.  As a consequence the letter of credit would

become a dubious device for securing credit."); In re Pine Tree Elec. Co., 34 B.R. 199, 201

(Bankr. D. Me. 1983) (calling of letter of credit does not violate automatic stay); In re Elegant

Merchandising, Inc., 41 B.R. 398, 399 (S.D.N.Y. 1984) ("payment of a letter of credit is not a

transfer of assets in violation of the automatic stay provisions of 11 U.S.C. 362"); AMJUR

BANKRUPTCY § 1781 ("a letter of credit issued by a bank or other entity, at the request of the

debtor, which authorizes the bank or other entity to make a payment to a creditor of the debtor, is

not subject to the automatic stay").

   The Bank is not entitled to dismissal of ACE's breach claim on the ground that

ACE's request for payment on the Letter of Credit violates the automatic stay provision in 11

U.S.C. § 362.

**III.** **DECLARATORY JUDGMENT**

   Plaintiff seeks a declaration that "each time it presents the Bank with a sight draft,

drawn on the Bank, bearing the clause 'Drawn under Credit No. 0706035392,' the Bank is

13

required to honor and pay the amount of such sight draft to ACE within seven (7) banking days

following the day of the Bank's receipt of such sight draft, without the necessity of ACE having

to provide or produce any other documentation or information to the Bank." (Cmplt. ¶ 47)

       The Declaratory Judgment Act provides that "[i]n a case of actual controversy

within its jurisdiction . . . any court of the United States . . . may declare the rights and other

legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  The Act

thus "confers on federal courts 'unique and substantial discretion in deciding whether to declare

the rights of litigants.'" Peconic Baykeeper, Inc. v. Suffolk County, 600 F.3d 180, 187 (2d Cir.

2010) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).  In determining whether

declaratory relief is warranted, "[t]he court must consider whether a declaratory judgment will

(1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford

relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Camofi

Master LDC v. College Partnership, Inc., 452 F.Supp.2d 462, 480 (S.D.N.Y. 2006) (quoting

Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation

omitted)).  When the court in its discretion determines that either of these conditions is satisfied,

it is "'required to entertain a declaratory judgment action.'" Cosa Instrument Corp. v. Hobre

Instruments BV, 698 F.Supp.2d 345, 350 (E.D.N.Y. 2010) (quoting Starter Corp. v. Converse,

Inc., 84 F.3d 592, 597 (2d Cir. 1996)).

       Here, it is clear that there is an "actual controversy" and that a grant of declaratory

relief would "serve a useful purpose in clarifying and settling the legal relations in issue." Cont'l

Cas. Co., 977 F.2d at 737.  As noted earlier, this is the second lawsuit arising from the parties'

ongoing disagreement about the Bank's obligation to satisfy ACE's draw requests on the Letter

of Credit.  The instant case presents the same issues as those in the prior action before Judge

14

Kaplan (Dkt. No. 09 Civ. 8938 (LAK)), in which ACE also claimed that the Bank had failed

and/or refused to pay certain then-pending draw requests.  (09 Civ. 8938, Dkt. No. 5 (Amended

Complaint))  Judge Kaplan found that "it is quite clear that there is a real disagreement between

Ace and the Bank," but he dismissed the declaratory judgment claim on March 18, 2010, because

he believed that the Letter of Credit would be terminated by the Bank effective June 1, 2010.  (09

Civ. 8938, Dkt. No. 21)  The Letter of Credit was not terminated, however, and the identical

legal issues have resurfaced.  Under these circumstances, a declaratory judgment would "serve a

useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding."  Camofi Master LDC,

452 F.Supp.2d at 480.  The Bank's motion to dismiss the declaratory judgment claim will be

denied.

## IV.    MOTION TO TRANSFER

The Bank has also moved to transfer this action to the Eastern District of

Arkansas pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to

any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "The

purpose of § 1404(a) is 'to prevent waste of time, energy and money and to protect litigants,

witnesses and the public against unnecessary inconvenience and expense.'"  In re Stillwater Min.

Co. Sec. Litig., No. 02 Civ. 2806(DC), 2003 WL 21087953, at *2 (S.D.N.Y. May 12, 2003)

(quoting Trehern v. OMI Corp., No. 98 Civ. 0242(RWS), 1999 WL 47303, at *1 (S.D.N.Y. Feb.

1, 1999) (internal quotations omitted)).  The burden is on the moving party to make a "clear and

convincing showing that transfer will serve the interests of convenience and fairness."  Capitol

Records, LLC v. VideoEgg, Inc., 611 F.Supp.2d 349, 368 (S.D.N.Y. 2009).

"A court performs a two-part inquiry to determine whether transfer is

appropriate." In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y.

2006). The "threshold question" is

> ". . . whether the action could have been brought in the district to which
> the moving party seeks to transfer the action." Alexander Ins. Ltd. v.
> Executive Life Ins. Co., No. 90 Civ. 8268, 1991 WL 150224, at *2
> (S.D.N.Y. July 29, 1991). "[A]n action might have been brought in
> another forum if, at the time the action was originally filed, the transferee
> court would have had subject matter jurisdiction and personal jurisdiction
> over the defendants, and if venue would have been proper in the transferee
> court." Posven, C.A. v. Liberty Mut. Ins. Co., No. 02 Civ. 0623, 2004 WL
> 63497, at *7 (S.D.N.Y. Jan. 12, 2004).

Grace v. Bank Leumi Trust Co. of N.Y., No. 02 Civ. 6612 (RMB), 2004 WL 639468, at *3

(S.D.N.Y. Mar. 31, 2004) (alterations in original).

In determining whether a proposed transferee court has personal jurisdiction over

a defendant, courts must

> look to the state of affairs "at the time of the bringing of the action." That is,
> subject matter jurisdiction, personal jurisdiction, and venue would have had to
> have been proper in the transferee court at the time the action was filed. See
> Posven, C.A., 303 F. Supp. 2d at 401 ("For the purposes of section 1404(a), an
> action might have been brought in another forum if, at the time the action was
> originally filed, the transferee court would have had subject matter jurisdiction
> and personal jurisdiction over the defendants, and if venue would have been
> proper in the transferee court.").

Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106 (PGG), 2009

WL 2252116, at *3 (S.D.N.Y. July 28, 2009). These requirements cannot be waived by the party

seeking the transfer. Hoffman v. Blaski, 363 U.S. 335, 343 (1960); see also Schertenleib v.

Traum, 589 F.2d 1156, 1161 (2d Cir. 1978) (noting that § 1404(a) "authorize[s] transfer only to

an alternative forum in which jurisdiction over the defendant could have been obtained at the

time suit was brought regardless of his consent").

16

The second part of the inquiry requires a court to "evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice." In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d at 394 (citing In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998); Lewis v. C.R.I., Inc., No. 03 Civ. 651(MBM), 2003 WL 1900859, at *2 (S.D.N.Y. Apr. 17, 2003)).  These factors are:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

Id. (citing Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006); Nematron, 30 F. Supp. 2d at 400; Lewis, 2003 WL 1900859, at *2)).

## A.      This Action Might Have Been Brought in the Eastern District of Arkansas

Plaintiff does not dispute, and the Court finds, that this action could have been brought in the Eastern District of Arkansas.

Under 28 U.S.C. § 1391(b) and its predecessor, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b) (previously found at 28 U.S.C. § 1391(a)).  Given that the Bank is headquartered in the Eastern District of Arkansas, venue is proper in that district.

## B.      Interest of Justice Factors

Because this action "'might have been brought' in the transferee court," this Court must go on to "determine whether, considering the 'convenience of parties and witnesses' and the 'interest of justice,' a transfer is appropriate." Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (quoting Wilshire Credit Corp. v. Barrett Capital Management Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997)).  "[T]he Court has 'considerable discretion in

adjudicating a motion for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" Williams v. City of New York, No. 03 Civ. 5342(RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)).

### 1. Plaintiff's Choice of Forum

As a general matter, "[a] plaintiff's choice of forum 'is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.'" Hershman v. UnumProvident Corp., 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2007) (quoting Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001)); see also DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002) ("Ordinarily a strong favorable presumption is applied to [plaintiff's choice of forum].") (citing Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996)).

Where a plaintiff files suit outside its home district, however, its choice of forum may be accorded less deference:

> [t]he Second Circuit has clarified the amount of deference to which a plaintiff is entitled when [it] files a lawsuit outside of [its] home forum: the more such a decision is "dictated by reasons that the law recognizes as valid, the greater the deference that will be given to" it; the more it appears the decision is "motivated by forum shopping reasons," the less deference will be accorded to it.

Hershman, 658 F. Supp. 2d at 601 (quoting Iragorri v. United Technologies Corp., 274 F.3d 65, 73 (2d Cir. 2001)).

There is no evidence that ACE has engaged in forum shopping, but because it does not reside in this District, its decision to file suit here will be afforded a lesser degree of deference. See Amick v. Am. Express Travel Related Servs. Co., Inc., No. 09 Civ. 9780(AKH), 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010) ("Amick's decision to bring this action in the

Southern District of New York is accorded a lesser degree of deference because he is not a

resident of the Southern District of New York and the instant action is 'minimally connected

with [this District]'") (quoting <u>Abney v. Gen. Elec. Co.</u>, No. 08 Civ. 7344(WHP), 2009 WL

1181300 (S.D.N.Y. May 4, 2009) (quoting <u>Pierce v. Coughlin</u>, 806 F. Supp. 426, 429 (S.D.N.Y.

1992))). Accordingly, this factor weighs only slightly against transfer.

### 2.   **Convenience of the Parties and Witnesses**

"The convenience of the forum for witnesses 'is probably considered the single

most important factor in the analysis of whether a transfer should be granted.'" <u>Beatie & Osborn</u>

<u>LLP v. Patriot Sci. Corp.</u>, 431 F.Supp.2d 367, 396 (S.D.N.Y. 2006) (quoting <u>Schnabel v. Ramsey</u>

<u>Quantitative Sys., Inc.</u>, 322 F.Supp.2d 505, 516 (S.D.N.Y. 2004)). The Court must consider the

convenience of both party and non-party witnesses. [4] <u>Montgomery v. Tap Enterprises, Inc.</u>, No.

06 CV 5799(HB), 2007 WL 576128, at *3 (S.D.N.Y. Feb. 26, 2007) ("'[t]he convenience of

party and nonparty witnesses is usually the most important consideration in deciding a motion to

transfer venue'") (quoting <u>AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.</u>, 326 F.Supp.2d

525, 529 (S.D.N.Y. 2004)).

"When weighing this factor, courts must consider the materiality, nature, and

quality of each witness, in addition to the mere number of witnesses in each district." <u>Beatie &</u>

<u>Osborn LLP</u>, 431 F.Supp.2d at 396 (citing <u>Houlihan Lokey Howard & Zukin Capital, Inc. v. The</u>

<u>Protective Group, Inc.</u>, No. 05 Civ. 4741(DC), 2005 WL 3367044 (S.D.N.Y. Dec.12, 2005)).

"The moving party must specify the witnesses to be called and provide general information as to

---

[4]  Some courts have ruled that "[t]he convenience of non-party witnesses is accorded more
weight than that of party witnesses," <u>Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.</u>, 419
F.Supp.2d 395, 402 (S.D.N.Y. 2005) (citing <u>Royal & Sunalliance</u>, 167 F.Supp.2d at 577 (citing
<u>Nieves v. Am. Airlines</u>, 700 F.Supp. 769, 773 (S.D.N.Y. 1988))), while others have not
distinguished between party and non-party witnesses. <u>Berman</u>, 30 F.Supp.2d at 657
("[c]onvenience of both the party and non-party witnesses is probably the single [] most
important factor in the analysis of whether transfer should be granted").

what their testimony will cover." Age Grp. Ltd. v. Regal Logistics, Corp., No. 06 Civ.

4328(PKL), 2007 WL 2274024, at *4 (S.D.N.Y. Aug.8, 2007).

      Here, the Bank argues that all of its potential witnesses reside in Arkansas. (Def.

Br. at 16; Def. Rep. Br. at 9)  The Bank has also submitted an affidavit from Keith Cox, a former

Bank officer who signed the Letter of Credit and who has personal knowledge of ACE's draw

requests. (Pikus Rep. Decl., Ex. A)  In his affidavit, Cox states that he lives and works in

Arkansas and that it would be inconvenient for him to travel to New York. (Id. at ¶¶ 8-9)  ACE

argues, however, that it has "significant operations in the Southern District of New York," and

that "many of its witnesses are located in or near here." (Pltf. Opp. Br. at 23)

      Given that this is a breach of contract action, in which the issues are likely to turn

on the language of the Letter of Credit and the applicability of the automatic stay, it is not clear

to the Court how many witnesses will be called to testify, either during discovery or at trial.

      The Court concludes that this factor is neutral.

### 3.    Availability of Process to Compel Attendance of Unwilling Witnesses

      "'The availability of process to compel the testimony of important witnesses is an

important consideration in transfer motions.'" Billing v. Commerce One, Inc., 186 F. Supp. 2d

375, 378 (S.D.N.Y. 2002) (quoting Arrow Elecs., 724 F. Supp. at 266).  Under Federal Rule of

Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the

state or within 100 miles of the court.  However, "even if [a party's] witnesses do refuse to

testify [at a trial], deposition testimony is an acceptable alternative." Farberware Licensing Co.

LLC v. Meyer Mktg. Co., No. 09 Civ. 2570(HB), 2009 WL 1357956, at *2 (S.D.N.Y. May 14,

2009).

20

Here, the Bank has not offered any evidence that any witness would be unwilling to testify in New York.[5] To the extent that Bank witnesses located in Arkansas are Bank employees, the Bank presumably can compel the testimony of its employees without a subpoena. See Walker v. Jon Renau Collection, Inc., 423 F. Supp. 2d 115, 119 n.4 (S.D.N.Y. 2005) ("[t]he availability of process to compel attendance of unwilling witnesses . . . is neutral in this case since defendant can compel the testimony of its own employees without resorting to a subpoena, and plaintiff has not specified any probable third-party witnesses under the subpoena power of this Court"); A & A Jewellers Ltd. v. Commemorative Brands, Inc., No. 03-CV-0651E(F), 2004 WL 912929, at *1 (W.D.N.Y. Mar. 30, 2004) ("With respect to . . . the availability of process to compel witnesses to testify at trial – [defendant] has not identified any witnesses who are unwilling to travel to this district to testify. Indeed, [defendant's] witnesses are its own employees, whom [defendant] will presumably make available for trial."); Schnabel, 322 F. Supp. 2d at 518 ("the availability of process to compel attendance of unwilling witnesses . . . is mostly irrelevant as it appears that all of [defendant's] witnesses are its officers and employees"); Payne v. Taylor Vision Resources, No. Civ. 3:02CV2234(AWT), 2003 WL 22218142, at *3 (D. Conn. Sept. 23, 2003) ("as to the availability of process to compel attendance of unwilling witnesses, the defendants have failed to make a specific showing that any significant non-party witness would be unwilling to travel to Connecticut . . . to testify. . . . As to witnesses who are employees of the defendants, the defendants are in a position to facilitate travel to Connecticut by any unwilling employees. Thus, this factor weighs slightly in favor of plaintiffs.")

---

[5] Affiant Cox stated that it would be inconvenient for him to appear for testimony in New York; he did not swear that he would refuse to testify at a New York proceeding. (Pikus Rep. Decl., Ex. A)

Defendant has identified only one potential witness who is not a party witness and who is not subject to the subpoena power of this Court – the trustee in AFS's bankruptcy action in Arkansas. (Def. Rep. Br. 9)  The relevance of this witness's testimony is not clear, however. The Court concludes that this factor is neutral.

### 4.    Locus of Operative Facts

"The locus of operative facts is an 'important factor to be considered in deciding where a case should be tried.'" Age Group Ltd., 2007 WL 2274024, at *3 (quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1992)).  "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'"  Id. (quoting 800-Flowers, 860 F. Supp. at 134).

The Bank argues that "all operative facts and the transactions between AFS and [the Bank] giving rise to the Letter of Credit took place in the Eastern District of Arkansas." (Def. Br. 16)  The Bank provides no details to substantiate this assertion, however, and this conclusory statement carries little weight.  Given that this is a breach of contract action, it is not clear that the Court will be required to go beyond the four corners of the contract.  Under the circumstances, this factor is neutral.

### 5.    Location of Relevant Documents

The location of documentary evidence is typically considered a neutral factor in the transfer analysis. See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.") (citing Aerotol Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)).  There is no reason to depart from this standard approach here.

6. **The Forum's Familiarity With The Governing Law**

A court may consider the forum's familiarity with the governing law; however, this factor is "one of the least important factors in determining a motion to transfer. . . ." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004) (citing Lesser v. Camp Wildwood, No. 01 Civ. 4209(RWS), 2002 WL 1792039, at *6 (S.D.N.Y. Aug. 2, 2002); Vassallo v. Niedermeyer, 495 F. Supp. 757, 760 (S.D.N.Y. 1980)).

Here, the Letter of Credit is governed by New York law. "The presence of this provision disfavors transfer [outside New York]." Breeden v. Tricom Bus Sys. Inc., 244 F.Supp. 2d 5, 9 (N.D.N.Y. 2003) (citing Ferens v. John Deere Co., 494 U.S. 516, 530 (1990) (diversity cases should be tried in the "forum that is at home with the state law that must govern the case").

This factor therefore weighs against transfer.

7. **Efficiency**

The parties have not offered "evidence of circumstances, such as crowded docket conditions, that might militate a speedier prosecution of the action in one District as opposed to another." Montgomery, 2007 WL 576128, at *5 (citing DeJesus v. Nat'l R. Passenger Corp., 725 F. Supp. 207, 209 (S.D.N.Y. 1989)). A transfer would likely only delay resolution of the matter. Accordingly, this factor is neutral.

\*       \*       \*       \*

The interest of justice factors here are all either neutral or weigh slightly against transfer. Accordingly, the Bank has not carried its burden to show that a transfer would be in the interest of justice, and its motion to transfer will therefore be denied.

23

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss or, in the

alternative, to transfer this action to the Eastern District of Arkansas is DENIED. The Clerk of

the Court is directed to terminate the motion (Dkt. No. 11).

Dated: New York, New York
       August 3, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

24